## Commonwealth v. Ganster

*John E. Brenneman,* district attorney, for Commonwealth.

*W. Burg Anstine* and *Martin B. Ebbert,* for defendant.

SHERWOOD, P. J., March 15, 1941.—This matter is before the court on motion to quash a bill of indictment. The offense charged is the unlawful, wilful, and malicious maiming and disfiguring of a mixed chow and police, yellow colored, female dog. The reasons alleged are: (*a*) That the indictment does not charge the commission of a crime or an indictable offense; and (*b*) the offense is not set forth with such certainty and particularity, as to the manner in which the dog was maimed and disfigured,

as to apprise defendant as to what he is called upon to answer, and to enable him to plead former conviction or acquittal.

The indictment against defendant is a good and sufficient one. It charges an indictable offense under the code, the pertinent portion of which is as follows: "Whoever wilfully and maliciously kills, maims, or disfigures any domestic animal of another person." A dog is a domestic animal. See Webster's New International Dictionary (2nd ed.), p. 764, and 2 Am. Jur. §5, p. 692. In the ordinary and usual meaning of the words "domestic animal", dog is considered to be included. It is an elementary principle of law that the words used in the statute are to be given their usual and customary interpretation: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 33.

As we understand it, there is no dispute between the parties that the dog was running at large, did not bear a proper license tag, and that the owner was unknown. Defendant's position is that, because the indictment fails to set forth the name of the owner of the dog, it must be quashed. With this we do not agree. The words, "of another person", used in the statute, do not mean that the dog killed, maimed, or disfigured must be identified as the property of some specific person. Rather, the logical interpretation of the words, in the light of the purpose of the statute, is that the offense described in the act is committed by killing, maiming, and disfiguring a domestic animal not owned by one committing the act. The intention of the statute is to distinguish between dogs owned by a defendant and dogs not owned by him. To kill or maim the latter is an offense under the act of assembly. Any other construction would permit an individual to go freely about the county killing, maiming, and abusing any domestic animal he chooses and be assured of immunity from prosecution, if the animals cannot be identified as the subject of ownership by some individual. While such may be the law in respect to animals of a nondomestic status, or animals ferae naturae, it is not the law in

respect to domestic animals. The legislature has seen fit to give to the latter class of animals a protection not afforded to those falling within the former class: 2 Am. Jur. §3, p. 690.

As to the second reason alleged, the law does not require that an indictment contain full and specific details as in a bill of particulars. If the crime charged is substantially in the language of the act of assembly, it is sufficient. The purpose of this act and the marked tendency of modern decisions is to accomplish substantial justice by ascertaining whether defendant is guilty or innocent, rather than to recognize the force of legal niceties and their technicalities. Of course, the indictment must be drawn with reasonable clearness and certainty to show the substance, time, and place of the alleged offense, so that a defendant may be informed in an intelligent manner of what he is called upon to answer and protected against a second conviction of the same offense. The particularity demanded, however, is only of the degree required in declarations—certainty to a certain intent in general; or that which, upon a fair and reasonable construction, may be called certain, and in which the averments of matters obviously arising from implication is unnecessary: Commonwealth v. Campbell, 116 Pa. Superior Ct. 180. It is not necessary for the indictment to show the manner in which the unlawful act was performed. That is a matter of proof. All that is required is that the indictment set forth a crime and that the charge be made with such degree of clarity as will enable defendant to know with what offense he is charged. In the instant case, we have only to determine whether the indictment sets forth, with the requisite certainty, the essentials of the offense which it is designed to charge. We feel the indictment stands these legal tests.

It follows that the motion to quash the bill of indictment must be refused.

At the argument, certain matters dehors the record were urged in support of the motion, but indictments are

never quashed for matters dehors the record. However, if these facts can be established by competent, legal proof, a more serious question will be presented at the trial of the case. Under The Dog Law of May 11, 1921, P. L. 522, sec. 19, it is the duty of every police officer to kill any dog which does not bear a proper license tag, which is found running at large. Under the same law the term "police officer" includes game, fish, and forest wardens. It would seem that where a police officer, acting in good faith, in the performance of this statutory duty, fails to kill, due to the inaccuracy of his aim, but maims and disfigures, the officer does not violate section 941 of The Penal Code of June 24, 1939, P. L. 872. Under such circumstances, his act is not unlawful and malicious.

The presumption arises in civil cases that an officer acting within the scope of his official authority does so in the discharge of an official duty. The acts of public officers, where the rights of the public require it, should be construed with liberality. There is always a presumption that they are in accordance with the law. This presumption can be repelled only by clear evidence of illegality. While this rule, as here stated, applies only to the discharge of official acts within the limit of the official authority in civil cases, it seems to us to bear, with even greater force, in favor of an officer who, in the discharge of his duty, acts within the limits prescribed by an act of assembly or in general for the public good: Commonwealth v. Frederick, 27 Pa. Superior Ct. 228. Of course, these are not matters that would require us to quash the bill, but will in all likelihood be raised at the trial of the issue.

And now, to wit, March 15, 1941, the motion to quash filed January 11, 1941, is overruled and refused; and an exception is granted to defendant, A. Clinton Ganster, to the action of the court in this regard.